KENNETH W. KENDALL & another[1] vs. VITO J. SELVAGGIO
& another.[2]

Middlesex. October 7, 1992. - November 5, 1992.

Present: LIACOS, C.J., NOLAN, LYNCH, & GREANEY, JJ.

*Adverse Possession and Prescription. Practice, Civil,* Trial jury-waived.

Dismissal of a claim of title to certain land by adverse possession could not
   properly rest on the conclusion that the claimants' possession was ren-
   dered permissive by reason of a mistake as to the location of the bound-
   ary line. [622-623]
Dismissal of a claim of title to certain land by adverse possession could not
   properly rest on the ground that the claimants' use of the land was
   permissive, where the record provided no basis for concluding that a
   prior owner, by consenting to the claimants' erecting and maintaining a
   fence in a particular location, had expressly permitted the claimants to
   use her land; on remand, the issue before the judge, as trier of fact, was
   to be whether the claimants had recognized the prior owner's authority
   to prevent or permit their use of the land, regardless of where the
   claimants believed the boundary line to be. [623-626]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 24, 1985.
   The case was heard by *Richard S. Kelley,* J.
   After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.
   *Joseph H. Sexton, III,* for the defendants.
   *Richard P. Howe* for the plaintiffs.
   NOLAN, J. In 1985 the plaintiffs filed a complaint in the
Superior Court alleging trespass. The defendants counter-
claimed that they had acquired title to the land in dispute
through adverse possession. The parties then stipulated that

---

[1]Gail J. Kendall.
[2]Vasilike Selvaggio.

the defendants' fence stood, in fact, on the plaintiffs' property and that if its presence there was not legal then trespass would lie. Because of this stipulation, the trial judge ruled that the plaintiffs had sustained their burden on the trespass claim, and, consequently, the burden had shifted to the defendants on their adverse possession counterclaim. The defendants then presented their evidence to the judge in a jury-waived trial. At the close of the defendants' evidence, the plaintiffs moved for directed verdict.[3] On June 25, 1990, the judge allowed the motion and ordered judgment for the plaintiffs entered on the complaint and also for the plaintiffs as defendants in the counterclaim.[4] The Appeals Court reversed, and, instead of remanding the case, ordered judgment for the defendants by reason of adverse possession. 32 Mass. App. Ct. 953, 954 (1992). We granted the plaintiffs' application for further appellate review. We now reverse the decision of the Superior Court and remand for a new trial.

In reviewing this case, we accept the judge's findings of fact as true unless they are clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 465 (1991). *Secretary of Envtl. Affairs* v. *Massachusetts Port Auth.*, 366 Mass. 755, 774 (1975) (in nonjury cases findings of fact are not set aside unless clearly erroneous). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

---

[3]The plaintiffs erred in moving for a directed verdict in a jury-waived trial. Motions for directed verdicts are proper only when a jury have been empanelled. *Bacon* v. *Federal Kemper Life Assurance Co.*, 400 Mass. 850, 851 n.4 (1987), citing J.W. Smith & H.B. Zobel, Rules Practice § 50.2, at 196 (1977). Only juries reach verdicts; judges make findings. The plaintiffs, if they believed that the evidence presented was insufficient to establish a prima facie case of adverse possession, should have moved for involuntary dismissal of the counterclaim pursuant to Mass. R. Civ. P. 41 (b), 365 Mass. 803 (1974).

[4]The judge did not order a directed verdict. In a jury-waived trial the judge is not permitted to do so. See Smith & Zobel, *supra*. Rather, the judge properly made findings of fact and conclusions of law pursuant to Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), and then entered judgment as if the plaintiffs had moved under rule 41.

conviction that a mistake has been committed." *J.A. Sullivan Corp.* v. *Commonwealth,* 397 Mass. 789, 792 (1986), quoting *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395 (1948). On the other hand, to ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts. *Marlow* v. *New Bedford,* 369 Mass. 501, 508 (1976). *Secretary of Envtl. Affairs* v. *Massachusetts Port Auth., supra* at 773. Thus, the "clearly erroneous" standard of appellate review does not protect findings of fact or conclusions based on incorrect legal standards. See *Marlow, supra.* We hold that the judge misapplied the law of adverse possession to the facts of this case.

In his memorandum of decision, the judge found the following facts. The parties own adjoining lots on Staples Street in Lowell. The defendants acquired title on May 31, 1957, and the plaintiffs acquired their title on June 27, 1983. In or about 1960, while Rose H. Crane, the plaintiffs' predecessor in title, was owner of the parcel, the defendant Vito Selvaggio asked whether she would object if he built a fence between the bushes that ran from the sidewalk area to the rear lot lines of their adjoining parcels. Both Crane and Selvaggio were concerned about the activities of neighborhood children. Crane gave her consent to the project, and Selvaggio subsequently built a fence approximately fifty feet long which he had extended to the back lot line the following year. The location of the proper boundary line between the lots was not discussed. In 1983, the plaintiffs, soon after acquiring the property, obtained an engineering survey which showed that the fence intruded onto the plaintiffs' lot by approximately eight to nine feet. The results of the survey were undisputed at trial. The plaintiffs immediately requested that the defendants remove the fence.

After reviewing the record, we cannot perceive that any of these findings of fact is clearly erroneous. Moreover, these facts are sufficient to establish a prima facie case of adverse possession under Massachusetts law. "Title by adverse possession can be acquired only by proof of nonpermissive use

which is actual, open, notorious, exclusive and adverse for twenty years." *Ryan* v. *Stavros*, 348 Mass. 251, 262 (1964). G. L. c. 260, §§ 21, 22 (1990 ed.). Witnesses testified at trial that the defendants' use of the land to maintain a fence was actual, open, notorious, exclusive, and continuous from approximately 1960 to 1983. The only requirement for adverse possession not obvious from the record is whether the defendants' possession was adverse or permissive.

Relying on these findings, the judge concluded (1) that both parties were mistaken as to the location of the boundary lines between the lots,[5] and (2) there was "permissive possession with consent and understanding on the other side on a mutual mistake of both parties." In other words, it appears from the record that the judge concluded that the defendants' use of the land was permissive because there was consent based on a mutual mistake.[6] This conclusion is in error. It is well established in Massachusetts that permissive use based on a mutual mistake as to the location of a boundary line will not defeat a claim of adverse possession. See, e.g., *Wood* v. *Quintin*, 328 Mass. 118, 119 (1951) (title to land acquired by adverse possession despite mutual mistake that fence was located on true boundary line). "It is not material that the right was claimed because of a mistaken belief as to the location of the boundary line between the properties of the plaintiffs and the defendant. The claim of ownership was to the strip of the plaintiffs' land which the defendant[s] [were] using, and was not limited by an erroneous belief as to titles." *Boutin* v. *Perreault*, 343 Mass. 329, 331-332 (1961), and cases cited. See Restatement of Property § 458,

---

[5]Although Vito Selvaggio testified that he believed he built the fence on his own property, there is no evidence in the record that Rose Crane was similarly mistaken as to the proper boundary line. Therefore, the judge's conclusion that there was a *mutual* mistake as to the boundary line is clearly erroneous.

[6]Although the judge did not expressly refer to a mutual mistake in his memorandum, the trial transcript records that it was the basis of his decision. In the memorandum, that decision is derived implicitly from the finding that the owners agreed on the location of the fence yet never discussed the boundary lines.

at 2926 (1944). The nature of the use and the resulting occupancy of the land is sufficient to indicate possession by the defendants under a claim of right. *Holmes* v. *Johnson*, 324 Mass. 450, 454 (1949). "It could be found that the acquiescence by the plaintiffs in the defendant[s'] use did not amount to license or permission and was due to a similar misunderstanding by them as to the true location of the boundary line." *Boutin, supra* at 332. The defendants' claim is limited not by Vito Selvaggio's belief that the property was his own but only by the intent with which they asserted a right of possession against all others. *Holmes, supra* at 454. Therefore, to the extent that the judgment was based on the belief that a mistake as to the location of a boundary line is a material factor in adverse possession cases, it was in error and must be reversed.

Moreover, to the extent that the judgment was based on the mistaken belief that *consent* to build a fence, by itself, vitiates the adverse nature of the use of that land, it was in error. The central inquiry should be whether consent was given to use the *plaintiffs'* land. *Ivons-Nispel, Inc.* v. *Lowe*, 347 Mass. 760, 763 (1964). The evidence thus far does not show that Rose Crane granted the defendants permission to build on *her own* property rather than on the boundary line or even on the defendants' property. Therefore, since Crane's consent did not expressly permit the defendants to use her land, it did not vitiate the defendants' adverse possession claim.

Furthermore, Selvaggio's *intent* in seeking Crane's consent is irrelevant to a claim of adverse possession. Cf. *Flynn* v. *Korsack*, 343 Mass. 15, 18-19 (1961) (prescriptive easement). In a number of earlier cases, this court has held that a possessor's intent not to deprive others of their property does not prevent the possessor from acquiring title to that property through adverse possession. See, e.g., *id.* at 19 (possessor acquired prescriptive rights despite claim that she did not use plaintiffs' property "deliberately"); *Van Allen* v. *Sweet*, 239 Mass. 571, 574 (1921) (possessor acquired prescriptive title despite statement to plaintiff that "I do not

want anything not belonging to me"). Instead of focusing on what the parties said twenty or more years ago, we have held repeatedly that courts must look to the physical facts of entry and possession as evidence of an intent to occupy and to hold property as of right. *Flynn, supra* at 18, citing *Holmes, supra* at 454. As explained above, whether Vito Selvaggio believed he was building a fence on his property or on Rose Crane's property is irrelevant; what actions the parties took with regard to the property in dispute will determine whether the defendants acquired title through adverse possession. "The great majority of the cases establish convincingly that the alleged requirements of claim of title and of hostility of possession mean only that the possessor must use and enjoy the property continuously for the required period as the average owner would use it, without the consent of the true owner and therefore in actual hostility to him irrespective of the possessor's actual state of mind or intent." *Ottavia* v. *Savarese,* 338 Mass. 330, 333 (1959), quoting American Law of Property, § 15.4, at 776-777 (1952). Thus, mental attitude is irrelevant where acts import an adverse character to the use of the land. *Flynn, supra* at 18-19. The justification for this position is that, if inconsistent with the true owner's rights, the possessor's actions and not his intent provide notice of nonpermissive use to the true owner. *Ottavia, supra* at 334.

Despite these earlier cases which explain that the possessor's intent to recognize the authority of the true owner is established by how he uses the property over the years, the judge failed to consider the defendants' actions concerning the land after approaching Crane. A judge must examine the nature of the occupancy in relation to the character of the land. *Ryan* v. *Stavros,* 348 Mass. 251, 262 (1964). Acts of possession which are "few, intermittent and equivocal" do not constitute adverse possession. *Parker* v. *Parker,* 1 Allen 245, 247 (1861). Here, the record reveals that the defendants added to the fence without consent, planted bushes and trees along the fence, and in other ways acted as if they claimed the land as their own. Such use of the land belies any conclu-

sion that it was done in recognition of or in submission to another's authority, and, hence, it supports a claim of adverse possession. See Restatement of Property § 458, at 2926, 2927 (1944). Based on these facts as presented in the record, we hold that there was ample evidence to establish at least a prima facie case of adverse possession.

We shall not, however, enter judgment for the defendants. The plaintiffs should not be deprived of their right to present evidence which contradicts the defendants' claim of adverse possession.[7] Parties moving for involuntary dismissal of a counterclaim as well as for directed verdict reserve the right to complete their presentation of the evidence in the event their motion is not granted.[8] A party who moves to dismiss a case for insufficient evidence should not be penalized for doing so. See Mass. R. Civ. P. 41 (b) (2), 365 Mass. 803 (1974); Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974). See also J.W. Smith & H.B. Zobel, Rules Practice § 50.11, at 207 (1977). To hold otherwise would inhibit an effective mechanism for ending litigation when no justiciable claim exists.

We defer to the trial court's special role as the primary fact finder in our judicial system; such obligatory deference is embodied in the· "clearly erroneous" standard of review. .See J.W. Smith & H.B. Zobel, *supra* at § 52.7, at 246-251.

---

[7]Plaintiffs assert that they have affirmative evidence to present to rebut the claim of adverse possession.

[8]Rule 41 (b) (2) of the Massachusetts Rules of Civil Procedure, 365 Mass. 803 (1974), reads in part: "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, *without waiving his right to offer evidence in the event the motion is not granted,* may move for a dismissal on the ground that . . . the plaintiff has shown *no* right to relief" (emphasis added). The provisions of rule 41 (b) (2) are applicable to counterclaims. Mass. R. Civ. P. 41 (c). Rule 50 (a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 814 (1974), reads in part: "A party may move for a directed verdict at the close of the evidence offered by an opponent, and *may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made*" (emphasis added).

On remand, the duty of the judge is to determine whether the defendants recognized Crane's authority to prevent or to permit continued use of the land, regardless of where they believed the boundary line to be. *Ryan, supra* at 263, citing Restatement of Property § 458 (1944). If, after hearing and reviewing all the evidence, the judge finds that, by approaching Crane to obtain her consent to his erecting a fence, Selvaggio recognized her authority over the land and that from the proximity of the fence to her house Crane must have consented to building the fence on her own land, then the defendants' possession was permissive. If, on the other hand, the judge finds that Selvaggio's statements that he approached Crane only to be neighborly, combined with the nature of his use of that land over the years show that he did not recognize her authority, then the defendants' possession was not permissive but adverse to the plaintiffs' rights over the land. In either case, consent based on a mutual mistake is immaterial.

In summary, we reverse the judgment for the plaintiffs because the judge misapplied the law of adverse possession with regard to mutual mistake, consent, and intent, and we remand the case to restore to the plaintiffs the opportunity to present evidence against the defendants' counterclaim.

*So ordered.*